IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 06-00298-06-CR-W-ODS |
| GREGORY A. ESQUIVEL, ) | |
| Defendant. ) | |

<u>REPORT AND RECOMMENDATION</u>

This matter is currently before the Court on defendant Gregory Esquivel's Motion to Suppress Evidence (doc #343) which was filed <u>pro se</u> and incorporated by reference into defendant's Supplemental Motion for Suppression of Evidence and the Fruits Thereof (doc #346) which was filed by counsel. For the reasons set forth below, it is recommended that these motions be denied.

I. <u>INTRODUCTION</u>

On October 19, 2006, the Grand Jury returned a forty-count Superseding Indictment against defendants Francisco Felix-Moya, Guadalupe Melecio-Lopez, Elisa Bustamante, Eduardo Flores, Noah Salas, Gregory A. Esquivel, Jeffrey W. Singleton, Frank T. Hostetter, Pedro O. Montoya, Steven R. Dagnino, David A. Strain, Jeremy D. Anders, Troy M. Barney, Richard P. Abubo, Elisa Salas-Barraza, Aqua L. Prince, Dudley E. Cramer, Enrique V. Orquiz-Martinez, Brian E. Castroconde-de Leon and Victoria E. Ramos.[1] Defendant Esquivel is charged in Counts One, Twenty-Five, Twenty-Six and Forty. These counts provide:

<u>COUNT ONE</u>

That between on or about January 1, 2005, and the date of this Indictment, said dates being approximate, in the Western District of Missouri and elsewhere, [all

---

[1] Guilty pleas have been entered by defendants Francisco Felix-Moya, Elisa Bustamante, Eduardo Flores, David A. Strain, Jeremy D. Anders, Troy M. Barney, Richard P. Abubo, Aqua L. Prince, Dudley E. Cramer, Enrique V. Orquiz-Martinez, Brian E. Castroconde-de Leon and Victoria E. Ramos. Defendants Noah Salas, Frank T. Hostetter, Pedro O. Montoya, Elisa Salas-Barraza have guilty plea hearings scheduled. There is an outstanding arrest warrant for defendant Guadalupe Melecio-Lopez.

defendants] did knowingly and intentionally combine, conspire, confederate, and agree with each other and others both known and unknown to the Grand Jury, to distribute 1) methamphetamine, a Schedule II controlled substance, in an amount of fifty (50) grams or more, 2) cocaine, a Schedule II controlled substance, and 2) [sic] a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in an amount of more than fifty (50) kilograms or more, all contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), all in violation of Title 21, United States Code, Section 846.

### COUNT TWENTY-FIVE

That on or about June 12, 2006, said date being approximate, in the Western District of Missouri, GREGORY A. ESQUIVEL, defendant herein, did knowingly and intentionally possess with the intent to distribute fifty (50) grams or more of methamphetamine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

### COUNT TWENTY-SIX

That on or about June 12, 2006, said date being approximate, in the Western District of Missouri, GREGORY A. ESQUIVEL, defendant herein, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the conspiracy to distribute marijuana and methamphetamine set forth in Count One, and which is incorporated by reference herein, in furtherance of the conspiracy to distribute marijuana and methamphetamine set forth in Count One, did possess a firearm to-wit: a Smith and Wesson, model 10-5, .38 caliber revolver, serial number 60340, contrary to the provisions of Title 18, United States Code, Section 924(c)(1)(A), all in violation of Title 18, United States Code, Section 2.

### COUNTY FORTY: NOTICE OF FORFEITURE

The allegations contained in Count One of this Indictment are re-alleged and incorporated by reference for the purpose of alleging a forfeiture pursuant to the provisions of Title 21, United States Code, Section 853.

Each defendant named herein shall forfeit to the United States all property, real and personal, constituting and derived from any proceeds said defendant obtained directly and indirectly as a result of the violation incorporated by reference in this Count and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of the violation incorporated by reference in this Count, including but not limited to the following:

* * *

As to defendant GREGORY A. ESQUIVEL, he shall forfeit any and all interest in the following personal property:

    A.    2002 Harley Davidson Motorcycle bearing Missouri Vehicle License: T6822, VIN 1HD4CJMI32K121032;

    B.    1965 Chevrolet Malibu bearing Missouri Vehicle License: 169-WTS,

            VIN 136375K127466;

    C.      1997 Yamaha four wheel ATV, VIN JY43GGA07VA111337;

    D.      1966 Harley Davidson Motorcycle bearing Missouri Vehicle License: T6829, VIN 66XLH6024; and

    E.      Approximately $5,100.00 in United States currency.

\* \* \*

(Superseding Indictment)

On January 24, 2008, an evidentiary hearing was held on defendant's motions to suppress. Defendant Esquivel was represented by appointed counsel Michael Huffman. The Government was represented by Assistant United States Attorney Joseph Marquez. The Government called Task Force Officer Eric McAllister and Special Agent Billy Lee Wright, Jr., of the Bureau of Alcohol, Tobacco, Firearms and Explosives as witnesses. Defendant called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. In the summer of 2006, Task Force Officer Eric McAllister was involved in an investigation of methamphetamine in the Kansas City area. (Tr. at 3) As part of the investigation, officers utilized a Title III wiretap on a telephone of Elisa Bustamante. (Tr. at 3) Investigators were monitoring the Title III wiretap of Bustamante's phone on the evening of June 11, 2006. (Tr. at 3) A call was intercepted in which Bustamante and a male subject were having a discussion about a potential delivery of methamphetamine and marijuana to Sedalia, Missouri. (Tr. at 4) Bustamante later called the male subject back and told him that she had everything ready and that she was going to roll over to Sedalia. (Tr. at 4) The investigators intercepted yet another call from Bustamane to the male subject. (Tr. at 4) In this call, Bustamante made the statement that the trees are different, indicated they were darker and had seeds in them. (Tr. at 5) The male subject advised Bustamante to bring five of them. (Tr. at 5) The investigators interpreted this to mean that Bustamante was to bring five pounds of marijuana. (Tr. at 5) Task Force Officer McAllister testified that the officers had extensive knowledge of Bustamante's drug-trafficking habits and that this was not the first time she had been intercepted talking about narcotics transactions. (Tr. at 5) ATF officers had also surveilled drug transactions that Bustamante had done. (Tr. at 5)

2. After the third telephone call, ATF officers initiated surveillance on Elisa Bustamante on Noland Road near I-70 in Independence. (Tr. at 5) Officers followed Bustamante to Sedalia, Missouri. (Tr. at 6) At approximately 8:00 p.m., Bustamante pulled into a driveway between two residences located at 1605 East 4th Street and

3

1609 East 4th Street in Sedalia. (Tr. at 6-7, 22)

3.  Surveillance officers observed two females get out of the vehicle. (Tr. at 7) Present in the car with Elisa Bustamante was Victoria Ramos. (Tr. at 6) Task Force Officer McAllister testified that Ramos is a friend of Bustamante who was been with her on previous drug deals. (Tr. at 6-7) Ramos was observed with a white bag in her hand. (Tr. at 7) Bustamante and Ramos were observed having contact with Gregory Esquivel. (Tr. at 7) Surveillance officers observed Esquivel, Bustamante and Ramos going to the rear of the residence at 1609 4th Street. (Tr. at 7-8) Following that, Bustamante and Ramos were observed coming out from behind the residence into the common driveway area with Esquivel. (Tr. at 8) At that time, Bustamante and Ramos had nothing in their hands. (Tr. at 8)

4.  Elisa Bustamante and Victoria Ramos then left the residence and traveled outside the area. (Tr. at 8) At approximately 8:45 p.m., surveillance officers observed defendant Esquivel leave the residence with a female, Kellie Jessup, and two children. (Tr. at 8) Officers maintained surveillance on Esquivel's vehicle. (Tr. at 8) Esquivel was pulled over by the Sedalia Police Department on a traffic stop. (Tr. at 9) Someone from the surveillance operation had directed the Sedalia police officers to stop Esquivel. (Tr. at 21) Esquivel was arrested for felony driving with a revoked license. (Tr. at 9, 21) No controlled substances were recovered during the car stop. (Tr. at 9)

5.  Shortly after defendant Esquivel was in custody, Task Force Officer McAllister contacted the Pettis County Prosecutor in reference to obtaining a search warrant for the residences. (Tr. at 9, 21-22) Task Force Officer McAllister believed that controlled substances were present at the residences based on the delivery by Elisa Bustamante. (Tr. at 9-10) While Task Force Officer McAllister was in the process of getting the search warrant, other members of the ATF, including Special Agent Billy Lee Wright, Jr., were securing the residences. (Tr. at 15, 32)

6.  Task Force Officer McAllister gave an Affidavit in support of the Application for Search Warrant. (Government's Ex. 1) The Affidavit provides in part:

    5.  I am currently investigating alleged violations of the federal narcotics statutes committed by Gregory A. Esquivel, (W/M DOB: 05-26-1972) and others yet to be identified. During the course of this investigation I have learned the following information:

    6.  On June 12, 2006, FBI Special Agent Scott Pickle, who was monitoring a Title III Court Order on the telephone subscribed to Elisa BUSTAMANTE, intercepted a telephone conversation between BUSTAMANTE and an unidentified male subject. During the conversation BUSTAMANTE told the male subject that she would be driving to Sedalia, Missouri to deliver methamphetamine to an unknown male subject. ... Additional information included that BUSTAMANTE was driving a 2006 silver/green Dodge Stratus, bearing Nevada license plates of 240-TDX ....

    7.  ... Elisa Bustamante has a prior felony arrest for possession of a controlled substance by the Kansas City Police Department and has no convictions.

4

8. On June 12, 2006, at approximately 1940 hours, ATF personnel observed a 2006 Dodge Stratus, bearing Nevada License of 240-TDX traveling southbound on US Highway 65 in Sedalia, Missouri. Investigators observed that there were two Hispanic Female occupants of the vehicle. TFO McAllister identified the two occupants of the vehicle as Elisa BUSTAMANTE and Victoria RAMOS.

9. Investigators followed the vehicle into the city of Sedalia and observed the aforementioned vehicle travel east bound on US 50 Highway to the intersection of US 50 and South New York Avenue in Sedalia, Missouri. The vehicle traveled north on South New York Avenue and ultimately pulled into a driveway located between 1605 East 4th Street and 1609 East 4th Street in Sedalia, Missouri.

10. ATF Task Force Officer Casey Ballantyne observed Elisa Bustamante and Victoria RAMOS standing outside the Dodge Stratus in the driveway. TFO Ballantyne observed that Victoria RAMOS had a white in colored bag in her hand. The two females contacted a male subject in the driveway that was later identified as Gregory Allen ESQUIVEL of 1609 East 4th Street in Sedalia, Missouri. The two females and ESQUIVEL were observed walking to the rear of the residence of 1609 East 4th Street.

11. On June 12, 2006, at approximately 2017 hours, ATF Special Agent Bill Wright and ATF Task Force Officer Greg Coon observed the front hood of a brown Chevrolet Impala raise up. The Chevrolet Impala was sitting in the common driveway between 1605 East 4th Street and 1609 East 4th Street. A short time later, SA Wright observed Elisa BUSTAMANTE and Victoria RAMOS talking to Gregory ESQUIVEL near the Chevrolet Impala. SA Wright and TFO Coon noticed that neither BUSTAMANTE nor RAMOS had any items in their hands at that time. BUSTAMANTE and RAMOS entered the 2006 Dodge Stratus and left the residence. Surveillance was able to determine that the vehicle occupied by BUSTAMANTE and RAMOS left the town of Sedalia, Missouri and headed north bound on US 65. Surveillance also determined that BUSTAMANTE and RAMOS did not contact any other individuals in the City of Sedalia before leaving the City.

12. SA Wright and TFO Coon continued surveillance on ESQUIVEL and observed that immediately after BUSTAMANTE and RAMOS left the residence, ESQUIVEL walked to and entered the residence at 1605 East 4th Street. A short time later ESQUIVEL exited the residence and walked to the rear of the residence at 1609 East 4th Street. ESQUIVEL then exited that residence and entered the detached garage next to 1605 East 4th Street. SA Wright and TFO Coon further observed ESQUIVEL return to the residence of 1605 East 4th Street.

13. SA Wright and TFO Coon observed ESQUIVEL and an unknown female with two children leave the residence at 1609 East 4th Street

5

and enter a burgundy Buick Park Avenue. Surveillance continued to follow the vehicle until Sedalia Police Officer David Smith conducted a traffic stop on the vehicle that was being driven by Gregory A. ESQUIVEL. The female passenger was identified as Kellie L. JESSUP of 1605 East 4th Street in Sedalia, Missouri. Investigators determined from talking to ESQUIVEL that he and Kellie JESSUP currently live together at 1605 East 4th Street in Sedalia, Missouri and ESQUIVEL rents the residence at 1609 East 4th Street. ESQUIVEL advised that he has personal items in both of the above-mentioned residences. Additionally, JESSUP told Officers that ESQUIVEL had been inside the residence of 1609 East 4th Street, prior to JESSUP and ESQUIVEL leaving the residence.

14. On June 12, 2006, TFO McAllister received NCIC criminal history records for information related to the criminal history for Gregory A. ESQUIVEL, the results of the query revealed that ESQUIVEL is a convicted felon. Specifically, the criminal history report provided the following information:

   a. On February 2, 1998 Gregory A. ESQUIVEL was sentenced to the Missouri Department of Corrections for five years for two counts of the class C felony of possession of a controlled substance from the Circuit Court of Cooper County, Missouri.

   b. On April 21, 1999 ESQUIVEL was sentenced to seven years in the Missouri Department of Corrections for the charge of Distribution, Delivery and Manufacture of a controlled substance from the Circuit Court of Pettis County, Missouri.

   * * *

16. Based on the foregoing facts and on my experience and training, I believe there is probable cause to believe that:

   a. That Gregory A. ESQUIVEL and others known and unknown are involved in the illegal distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1)(A) and 846; and

   b. That evidence of these violations can be found at the residence located at 1605 East 4th Street, Sedalia, Missouri; and 1609 East 4th Street, Sedalia, Missouri.

   * * *

(Government's Ex. 1)

7. A Pettis County judge signed the search warrant at approximately 12:26 a.m. on June 13, 2006. (Tr. at 10) The judge filled in the time of 12:26 a.m. on the Search Warrant and the Application for Search Warrant, but the date of June 12, 2006, was already typed on the documents. (Government's Ex. 1) The Search Warrant and the Application for Search Warrant also have a "Filed" stamp from the Pettis County

6

Circuit Court dated June 12, 2006. (Tr. at 25; Government's Ex. 1) Task Force Officer McAllister testified that he typed June 12 on the documents because he intended to get the search warrant to the judge before the early morning hours of June 13. (Tr. at 10) On the Affidavit, the judge wrote out: "Subscribed & sworn to before me this 13th day of June, 2006." (Government's Ex. 1) Task Force Officer McAllister was present when the judge signed the documents. (Tr. at 26) Task Force Officer McAllister testified that he is absolutely certain that the judge signed the warrant on June 13. (Tr. at 30)

8. The search warrant authorized officers to search the premises of 1605 East 4th Street and 1609 East 4th Street, Sedalia, Missouri. (Government's Ex. 1) The search warrant authorized officers to search for and seize methamphetamine and marijuana. (Government's Ex. 1)

9. The officers executed the search warrants for both residences at 12:45 a.m. on June 13, 2006. (Tr. at 12, 27) From 1609 East 4th Street, the officers recovered approximately one pound of methamphetamine and around six and one-half pounds of marijuana. (Tr. at 13) Based on the phone conversations that were intercepted, Task Force Officer McAllister believed that Elisa Bustamante was supposed to bring defendant Esquivel around one pound of methamphetamine and five pounds of marijuana. (Tr. at 13) The officers found the items that were believed to have been delivered by Bustamante, plus additional marijuana. (Tr. at 13) Officers also found other items that were indicative of drug trafficking in the residence, such as scales and money. (Tr. at 13) The ATF also seized a couple of Harley-Davidson motorcycles, a 1965 Chevrolet Malibu and a Yamaha four-wheel all-terrain vehicle. (Tr. at 13-14)

10. Seizure warrants for the 1965 Chevrolet Malibu (Government's Ex. 2), the 2002 Harley Davidson motorcycle (Government's Ex. 3), the 1997 Yamaha four wheel ATV (Government's Ex. 4) and the 1966 Harley Davidson motorcycle (Government's Ex. 5) were signed by Magistrate Judge John Maughmer. (Tr. at 14-15) These seizure warrants are dated October 24, 2006, after the return of the indictment charging defendant Esquivel. (Government Exs. 2, 3, 4 and 5)

III. DISCUSSION

Normally, the Court will only consider defense motions which are prepared by defendant's counsel. See Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001)("A district court has no obligation to entertain pro se motions filed by a represented party."), cert. denied, 534 U.S. 923 (2001). However, in this case, defense counsel incorporated by reference the pro se motion and memorandum in support filed by defendant into the motion filed by counsel. (See Supplemental Motion for Suppression of Evidence and the Fruits Thereof at 1) While various issues are raised in defendant's pro se pleadings, at the suppression hearing, defense counsel clarified the issues that he intended the Court to address in the following exchange:

7

THE COURT: And let me make sure that I understand. It was a little bit unusual, Mr. Huffman, since you incorporated kind of a *pro se* pleading, which as you [know] normally our policies are when someone's represented by counsel, we have counsel file the pleadings as opposed [to] the individual. I just want to make sure that I understand what issues you were raising in connection with the warrant. I know the issue was raised that the search, investigation and seizure because of the dating occurred prior to the issuance of the warrant. What other issues are you raising with respect to the validity of the search?

MR. HUFFMAN: That's it. That's all, Your Honor.

THE COURT: All right. There was an allegation by the defendant *pro se* that the warrant lacked probable cause. Is that something you're pursuing?

MR. HUFFMAN: Fundamentally, I think that's encompassed by the argument about the time on the warrant.

THE COURT: All right.

MR. HUFFMAN: And what I would say, Your Honor, is based on the testimony and, although it's contradictory with the way the documents are written, you have a document in front of you that's got a court stamp filing of June 12th, you've got a judge's signature of June 12th and then you've got this subsequent correction on June 13th. And it would seem to me that you've got to have a failure in whatever system "Filed" stamp stuff down in Pettis County coupled with the judge's error. And I think the document speaks for itself that it was "Filed" stamped and there wasn't an appropriate application with it, which means there wasn't probable cause. And that's –

THE COURT: That's your reason for arguing lack of probable cause is just the difference in the dates?

MR. HUFFMAN: Right.

(Tr. at 35-36)

Basically, defendant Esquivel seeks to suppress all items seized from the residences located at 1605 East 4th Street and 1609 East 4th Street, Sedalia, Missouri, due to a lack of probable cause because the search warrant was allegedly signed at 12:26 a.m. on June 12, 2006, before agents had access to the evidence which was generated later in the day on June 12 (and included in the Affidavit given in support of the application for search warrant).

The evidence presented at the hearing clearly shows that it was a clerical error that the search warrant and application contain the typed date of June 12 and the "Filed" stamp date of June 12, rather than June 13. Task Force Officer McAllister testified that he typed the June 12 date on the

documents because he intended to get the search warrant to the judge before the early morning hours of June 13. (See Fact No. 7, supra) Task Force Officer McAllister was present when the judge signed the documents and he testified that he is absolutely certain that the judge signed the warrant on June 13. (Id.) The Court finds the testimony of Task Force Officer McAllister to be credible. In United States v. White, 356 F.3d 865, 869 (8th Cir. 2004), the court found no error in the district court denying the defendant's motion to suppress evidence based on an incorrect date on the face of a search warrant. The court found that "the inconsistency between the date on the warrant-application form and the date on the search warrant does not eliminate probable cause" where the district court found the officer's testimony of a clerical error credible. Id.

The Court finds that probable cause existed to issue the search warrant. The clerical error does not defeat this probable cause. Defendant's argument must fail.

IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Esquivel's pro se Motion to Suppress Evidence (doc #343) and defendant's Supplemental Motion for Suppression of Evidence and the Fruits Thereof (doc #346).

Counsel are reminded they have ten days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                    */s/ Sarah W. Hays*
                                                    SARAH W. HAYS
                                       UNITED STATES MAGISTRATE JUDGE